# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL TRUST INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) Case No.: 3:21-cv-00914 |
| | ) |
| INTERCO TRADING COMPANY | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW National Trust Insurance Company (hereinafter "National Trust"), and for its Complaint for Declaratory Judgment under 28 U.S.C. §§ 1332 and Rule 57 of the Federal Rules of Civil Procedure, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff National Trust Insurance Company (hereinafter "National Trust") is and, was at all times mentioned herein, a corporation incorporated under the laws of the State of Indiana with its principal place of business in Sarasota, Florida, engaged in the business of insurance and licensed to transact that business in the State of Illinois.

2. Upon reasonable information and belief, Interco Trading Company, Inc. (hereinafter "Interco") is a corporation incorporated under the laws of the State of Illinois with its principal place of business in Madison, Illinois.

3. This case and controversy involve citizens of different states.

4. The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

5. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

6. Venue is proper in the United States District Court for the Southern District of Illinois under 28 U.S.C. § 1391(a) because Defendant is a citizen of Illinois, and a substantial amount of the events and occurrences giving rise to this action occurred in this District.

7. This Court "may declare the rights and other legal relations of any interested parties seeking such declaration" pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) with respect to the policies of insurance issued by National Trust and all above referenced parties are interested parties with respect to the determination of rights pursuant to the insurance policy issued by National Trust.

## GENERAL ALLEGATIONS

8. National Trust brings this action seeking the interpretation of an insurance policy described below and a declaration of its rights and obligations thereunder.

9. National Trust issued a commercial package policy to Interco bearing policy number CPP100046888-01, with effective dates June 1, 2019 to June 1, 2020 (the "Policy"). A certified copy of the Policy is attached hereto and incorporated by reference as Exhibit A.

10. Under the Policy, the following relevant limits apply to the building, business personal property, and loss of business income/extra expense:

| Coverage | Limit |
|---|---|
| **Blanket Building and Business Personal Property** | $22,780,580.00 |
| **Loss of Business Income** | $20,000.00 |

11. Interco is a metal and electronics recycling company located in Madison, Illinois.

12. In addition to the main business, Interco ran a separate entity called "Digital ITAD" which handled re-sale items in Interco's inventory.

13. On March 11, 2020, a fire broke out in Building 4 of Interco's Madison, Illinois facility.

14. After the fire, Interco made a claim to National Trust for damages arising out of the fire.

15. Specifically, Interco claimed to have sustained losses to its building, business personal property, and equipment in the fire.

16. Interco also claimed it lost business income as well as incurred costs related to extra expenses and debris removal.

17. National Trust conducted a thorough and extensive investigation into Interco's claim.

18. To date, National Trust has made payments totaling $14,449,069.94 on the claim.

19. With the payments, National Trust fully settled the claims under the policy for damage to the building and damage to equipment.

20. National Trust also issued undisputed amounts for debris removal, business personal property and loss of business of income.

21. National Trust's investigation is complete, and the company has determined no further money is owed under the policy of insurance including, but not limited to, any money under the coverages outlined below.

22. Interco claims it is entitled to receive at least $8,755,182.06 more under the Policy as more fully outlined below.

    A.    **Business Personal Property**

23. Interco has made a claim for damage to its business personal property.

24. The relevant policy provisions state:

***

> **b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

    **(1)**  Furniture and fixtures;

    **(2)**  Machinery and equipment;

    **(3)**  "Stock";

***

    **7.  Valuation**

    We will determine the value of Covered Property in the event of loss or damage as follows:

    **c.**  "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

***

    f. Manufacturer's Selling Price Finished "Stock" Only

    We will determine the value of finished "stock" you manufacture, in the event of loss or damage, at:
(1) The selling price, as if no loss or damage occurred;
(2) Less discounts and expenses you otherwise would have had.

***

25.    The Policy goes on to define "finished stock" as:

***

    **F.  Definitions**

    **1.**  "Finished stock" means stock you have manufactured.

    "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

    "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.  Ex.  A. p.

***

26.    National Trust received a demand on March 26, 2020, seeking $14,880,764.82 for all business personal property losses sustained from the fire.

27. To support this, Interco provided an inventory spreadsheet, which Interco claimed demonstrated the quantity and value of each item.

28. In order to investigate this claim, National Trust gathered documents and took sworn testimony from representatives of Interco.

29. Based on its investigation, National Trust tendered payments to Interco totaling $3,962,118.00 for the undisputed amount of business personal property.

30. National Trust is also tendering an additional $584,105.00 for the business personal property claim.

31. Interco is claiming an additional $10,085,352 in large part, because Interco believes it is entitled to receive "selling price" for all items listed on its inventory.

32. National Trust disputes the majority of the items qualify for "selling price" under the language of the policy.

33. National Trust also disputes Interco's valuation of many of the items even at selling price and has ultimately found that no further money is owed under the policy of insurance.

**B.  Loss of Business Income/Extra Expense**

34. Interco has made a claim for loss of business income and extra expense under the policy of insurance.

35. The relevant policy provisions state:

***

    **c.  Extended Business Income**

        **(1)  Business Income Other Than "Rental Value"**

        If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

>> **(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and
>
> **(b)** Ends on the earlier of:
>
>> **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or
>>
>> **(ii)** 60 consecutive days after the date determined in **(1)(a)** above.
>
> However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located. Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

*** 

**g. Business Income And Extra Expense**

> **(1) Business Income**
>
> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration" caused by or resulting from any Covered Cause Of Loss.
>
> The "suspension" must be caused by direct physical loss of or damage to:
>
>> (a) Property at premises, which are described in the declarations including personal property in the open (or in a vehicle) within 1,000 feet of the described premises; or

*** 

Resumption Of Operations

We will reduce the amount of your:

> (1) Business Income loss, other than Extra expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

> (2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.
>
> If you do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.
>
> We will only pay for loss of Business Income and Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage.
>
> The most we will pay for loss in any one occurrence under this Additional Coverage for both Business Income And Extra Expense is the lesser of $20,000 or the actual loss sustained. Ex. A. p.

***

36. On September 17, 2020, National Trust tendered the full limits of $20,000.00 for the loss of business income/extra expense portion of the claim.

37. As the limits have been paid, no further money is owed under the policy of insurance.

38. Interco disputes this and believes it is owed up to $3,000,000.00 under the Policy for its loss of business income.

    **C.**    **Debris Removal**

39. National Trust submitted payment to Interco on May 5, 2020, in the amount of $396,490.80 for debris removal.

40. The relevant policy provisions state:

***

> **4. Additional Coverages**
>
>   **a. Debris Removal**
>
> > **(1)** Subject to Paragraphs **(2)**, **(3)** and **(4),** we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.
> >
> > **(2)** Debris Removal does not apply to costs to:

7

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph (4), the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds

...

the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. Page 4 of 16 Insurance Services Office, Inc., 2011 CP 00 10 10 12 Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

*\*\*\**

**Debris Removal** –

1. **Coverage** – "We" pay the cost to remove the debris of covered property that is caused by a covered peril.

2. **We Do Not Cover** – This coverage does not include costs to:

   1) extract "pollutants" from land or water; or
   2) remove, restore, or replace polluted land or water.

3. **Limit** – "We" do not pay any more under this coverage than 25% of the amount "we" pay for the direct physical loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

4. **Additional Limit** -- "We" pay up to an additional $5,000 for debris removal expense when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

5. **You Must Report Your Expenses** – "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

*\*\*\**

41. Interco has indicated it may seek additional amounts for debris removal.

9

42. National Trust has paid what it is owed for debris removal under the policy of insurance.

## SUMMARY

43. An actual, justiciable controversy exists between National Trust and Interco, and litigation as to this controversy is imminent and inevitable. The resolution of the matters raised in this declaratory judgment action will dispose of the issues and disputes between the parties.

44. All necessary and proper parties are before the Court for the matters in controversy.

45. National Trust has no other adequate remedy at law.

WHEREFORE, Plaintiff National Trust Insurance Company prays that this Court declare the rights of the parties under the aforementioned Policy of insurance and enter judgment finding and declaring:

a. That National Trust owes nothing further the business personal property including additional amounts for items valued at selling price;

b. National Trust paid all amounts due for the loss of business income/extra expense coverage under the Policy, and Interco is not entitled to receive additional payments under the Policy;

c. National Trust paid all amounts due for debris removal coverage under the policy, and Interco is not entitled to receive additional payments for debris removal under the Policy;

d. That National Trust owes no more payments to Interco or any other entities for the March 11, 2020, loss under any coverages in the Policy.

e. That National Trust is entitled to its costs, including attorneys' fees; and

    f.    That National Trust is entitled to any such further relief this Court deems just and proper under the circumstances.

Respectfully submitted,

KNIGHT NICASTRO MACKAY, LLC


 /s/ *Jonathan B. Morrow*
Jonathan B. Morrow        #6291832IL
319 N 4th Street, Suite 300
St. Louis, Missouri 63102
Telephone: (314) 649-5234
Facsimile: (816) 396-6233
jmorrow@knightnicastro.com
***Attorneys for Plaintiff***


## CERTIFICATE OF SERVICE

I HEREBY certify that on this 10th day of August, 2021, I electronically filed the above and foregoing using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

 /s/ *Jonathan B. Morrow*